UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MILTON K. RICHARDSON, JR.,

                    Plaintiff,

v.                                                 9:18-CV-0474
                                                           (DNH/TWD)

J. GLEASON, Lt.; Cayuga County
Jail, CAYUGA COUNTY JAIL, and
CAYUGA COUNTY,

                    Defendants.[1]

---

APPEARANCES:

MILTON K. RICHARDSON, JR.
18-B-0988
Plaintiff, Pro se
Attica Correctional Facility
Box 149
Attica, NY 14011

DAVID N. HURD
United States District Judge

## DECISION AND ORDER

## I. <u>INTRODUCTION</u>

    This action was originally commenced by three pro se plaintiffs pursuant to 42 U.S.C. § 1983 ("Section 1983"), Dkt. No. 1, and a complete history of this action can be found in the Decision and Order filed on October 3, 2018. Dkt. No. 18 (the "October Order").

---

[1] Richardson has filed a letter motion seeking to modify the caption of the complaint. Dkt. No. 21. Specifically, plaintiff withdraws his claims against defendant Commissioner of Corrections Thomas J. Loughren and seeks to include Cayuga County and the Cayuga County Jail as named defendants. Plaintiff's motion is granted and the Clerk of the Court will be directed to amend the docket accordingly.

1

Among other things, the October Order granted the IFP Application of plaintiff Milton K. Richardson, Jr. ("Richardson"). Dkt. No. 18 at 5. At that time, the October Order also noted that while plaintiffs Robert Stryker ("Stryker") and Nathan Craig ("Craig") had filed Inmate Authorization Forms, they had failed to submit completed, signed, and certified IFP Applications. Dkt. No. 18 at 6-7.

The October Order afforded Stryker and Craig one final opportunity to comply with the filing fee requirements. Dkt. No. 18 at 6-7. These plaintiffs were directed to comply with the October Order within thirty days of the filing date. *Id*. These plaintiffs were further advised that if they did not comply they would be dismissed as parties to this action without prejudice and without further order of this Court. *Id*.

On November 8, 2018, having failed to respond to the October Order, Stryker and Craig were dismissed as plaintiffs. *See generally* Docket Report. The sufficiency of the allegations set forth by Richardson, the remaining plaintiff, will now be considered in light of the requirements imposed by 28 U.S.C. §§ 1915(e) and 1915A.

## II. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2]

---

[2] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, courts may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).

The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Summary of the Complaint[3]

The incidents that form the foundation for the complaint occurred while Richardson was confined as a pretrial detainee at Cayuga County Jail ("Cayuga C.J."). *See generally,* Compl.[4]

On December 29, 2017, Richardson, a Jewish inmate and certified Rabbi, filed a grievance asking for a Kosher diet because he sought to "revert back to [his] Jewish culturism [sic] diet." Dkt. No. 1-1 at 26. The grievance was received and investigated by defendant Lieutenant J. Gleason ("Gleason"). *Id*. Gleason "accepted" the grievance and, on January 4, 2018, plaintiff began receiving Kosher meals. *Id*. at 7, 25, 26.

---

[3] The complaint includes exhibits, *see* Dkt. No. 1-1, which will be considered to the extent they are relevant to the incidents described in the Complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (holding that complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[4] Notably, the complaint does not contain the dates of plaintiff's confinement at Cayuga C.J. In January 2018, plaintiff signed the complaint while confined at Cayuga C.J. *See* Compl. at 2, 5. On April 30, 2018, mail that was addressed to plaintiff at Cayuga C.J. was returned to the Court marked "undeliverable." Dkt. No. 5. On August 1, 2018, plaintiff filed a letter with the Court indicating that he was confined at Attica C.F. Dkt. No. 7.

4

On January 8, 2018, Richardson filed another grievance claiming that the facility was not following the proper standards for a Kosher diet. Dkt. No. 1-1 at 29. Gleason denied this grievance on January 16, 2018. *Id*. at 30.

On January 12, 2018, Richardson filed another grievance claiming that a "number of religious issues" were not addressed by the facility. Dkt. No. 1-1 at 27. Plaintiff asked for services, "outside facilitators," religious meals, religious clothing for services, books, and "holy day recognition." *Id*. Gleason issued a decision "accepting" this grievance on January 22, 2018. *Id*. Gleason noted that plaintiff was permitted to practice his faith, but that it was his "responsibility to take an active role in those religious practices." *Id*. Gleason explained that the facility did not employ "religious advisors" and that religious services for Christian detainees were conducted by volunteers. Dkt. No. 1-1 at 7, 28. Plaintiff was advised that he was permitted to worship in the same manner. *Id*. Finally, plaintiff signed the complaint in this action on January 16, 2018. Compl. at 5.

Construed liberally, Richardson claims that defendants failed to provide Kosher food, religious services, or religious material in violation of his First Amendment rights. *See generally*, Compl. As relief, plaintiff seeks compensatory damages, and asks the Court to direct defendants to "do what is supposed to be done." *Id.* at 5.

### C. Nature of Action

Richardson seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245,

at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). In other words, "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

Because he is proceeding pro se, the allegations in Richardson's complaint will be construed with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally).

### III. ANALYSIS

#### A. Cayuga C.J.

To the extent that Richardson seeks money damages against the Cayuga C.J., those claims must be dismissed. The Cayuga County Jail is merely an arm of Cayuga County, and thus does not have a legal identity separate and apart from the County itself. *See, e.g.*, *Sanchez-Martin v. Allegany County Jail*, 2012 WL 360014 at *2 (W.D.N.Y. Feb. 1, 2012) ("Initially, the Court finds that neither the Allegany or Steuben County Jails are proper defendants because they are merely arms of the Counties, and do not have legal identities separate and apart from the Counties and are thus not subject to suit."); *see also Warren v. Westchester County Jail*, 106 F. Supp. 2d 559, 561 (S.D.N.Y.2000) (finding in case where inmate brought suit under 42 U.S.C. § 1983 against Westchester County Jail that the correct

6

governmental defendant was Westchester County). Accordingly, plaintiff's claim for money damages against Cayuga C.J. will be dismissed.[5]

### B. Claims Against Cayuga County

Even construed liberally, Richardson's complaint cannot plausibly be read to allege any viable § 1983 claims against Cayuga County.

It is well-settled that municipal liability may not be founded solely on a municipality's employment of a tortfeasor; in other words, the municipality may not liable pursuant to Section 1983 under the theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, for a municipality to be held liable under Section 1983, a plaintiff must allege that the defendants' unconstitutional actions were taken pursuant to an official municipal policy, custom or practice. *Monell*, 436 U.S. at 690-91.

Richardson has not alleged the existence of any policy, custom, or practice that would support a claim of municipal liability on the part of Cayuga County. *See Velasquez v. City of N.Y.*, No. 12-CV-4689, 2012 WL 5879484, at *4 (E.D.N.Y. Nov. 21, 2012) (holding that the plaintiff did not "allege any facts from which this Court can construe any allegation of a failure of the City of New York policymakers to properly train or supervise their subordinates amounting to 'deliberate indifference' to the rights of those who come in contact with their employees."). Accordingly, plaintiff's claims against Cayuga County are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

---

[5] Plaintiff's request for injunctive relief against Cayuga C.J. is discussed, *infra*.

### C. Claims Against Gleason

Richardson does not allege that Gleason directly participated in the alleged constitutional violations. *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."). Rather, plaintiff claims that Gleason was aware of the constitutional violations because he investigated plaintiff's grievances.

Generally speaking, if the defendant is a supervisory official a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

However, the Second Circuit has held that supervisory personnel may be considered "personally involved" in a violation if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.

1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[6]

As mentioned above, Richardson relies upon the second *Colon* factor—he claims that Gleason was aware of the constitutional violations because he investigated plaintiff's grievances.

"In this circuit, it remains uncertain as to whether a supervisor may be found personally involved in an alleged constitutional violation where the only allegation is that he denied a plaintiff's grievance." *Thon v. Grimshaw*, No. 9:13-CV-0898 (GLS/DEP), 2016 WL 8671925, at *9 (N.D.N.Y. Aug. 26, 2016) (citing *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004)). However, district courts have found personal involvement based on the denial of a grievance where the alleged constitutional violation complained of in the grievance was "ongoing [. . . ] such that the 'supervisory official who reviews the grievance can remedy [it] directly.'" *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (citation omitted).

In other words, "[i]f the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008); *see also Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong . . . [must] have been capable of mitigation at the time the supervisory official was apprised thereof . . . Without such caveat, the personal involvement doctrine may effectively and improperly be

---

[6] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

9

transformed into one of respondeat superior.") (citation omitted); *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) ("[A] 'failure to remedy' theory of liability is not available with respect to discrete and completed violations."). Accordingly, plaintiff's First Amendment claims will be analyzed on that basis.

Richardson claims that defendants failed to provide Kosher food, religious services, or religious material in violation of his First Amendment rights. *See generally*, Compl.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

"Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588 (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).

To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted).

A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d

Cir. 2006) (citing *Ford*, 352 F.3d at 591).[7] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir.1996).

Richardson claims that while he was confined at Cayuga C.J., he was denied prayer time (including time to observe holy days), religious material, religious clothing, books, and other religious items (including necklaces and medallions). Compl. at 5. Additionally, plaintiff asserts that the "Kosher diet" was improper because the inmates were served soy products and provided with food in unclean, unwrapped containers. *Id*.

Even assuming that Richardson's religious beliefs were "sincerely held," plaintiff has failed to plead facts suggesting that his beliefs were "substantially burdened." While "courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights," *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004), here, plaintiff's claims are not sufficiently pleaded because he failed to specify when, or how often, or under what circumstances he was denied Kosher meals. *See Leach v. New York City*, No. 12 CIV. 3809, 2013 WL 3984996, at *2 (S.D.N.Y. Aug. 2, 2013) ("The intermittent failure to provide incarcerated individuals with food complying with their religious dietary restrictions is a de minimis imposition falling far short of the substantial burden requirement[.]").

---

[7] The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887). In the absence of any controlling precedent to the contrary, the substantial-burden test will be applied here.

11

With respect to the claim that the failure to employ an "outside facilitator" substantially burdened Richardson's religious freedoms, plaintiff has failed to provide any facts showing how or why the lack of a facilitator impacted his religious freedoms at all. *See Ramrattan v. Fischer*, No. 13 CIV. 6890, 2015 WL 3604242, at *11 (S.D.N.Y. June 9, 2015) (dismissing First Amendment claim as the plaintiff plead no facts regarding how contact with Hindu advisors is "central or important" to the practice of his faith) (citation omitted).

With respect to the remaining allegations, Richardson has not alleged facts related to when or for how long he was deprived of his right to practice this religion, The complaint contains only vague accusations without any specified dates, times, or facts that might establish how he was burdened. These allegations, without more, fail to plausibly suggest that defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment religious claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. <u>Injunctive Relief</u>

Finally, Richardson seeks injunctive relief to direct defendants to "do what is supposed to be done." Compl. at 5.

"Every order granting an injunction and every restraining order must: (i) state the reasons why it issued; (ii) state its terms specifically; and (iii) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required. *See* Fed. R. Civ. P. 65(d).

Richardson does not set forth which specific acts must be enjoined. As presently

pleaded, plaintiff's request that defendants "obey the law" is improper.  *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) ("[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law."); *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989) ("To comply with the specificity and clarity requirements, an injunction must 'be specific and definite enough to apprise those within its scope of the conduct that is being proscribed.' " (quoting *In re Baldwin–United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985))).

Additionally, Richardson's request for injunctive relief is moot because he is presently confined at Attica Correctional Facility ("Attica C.F.").  *See Robinson v. Uhler*, No. 9:16-CV-0232 (DNH/DJS), 2017 WL 4075178, at *2 (N.D.N.Y. Aug. 14, 2017), *report and recommendation adopted*, 2017 WL 4075191 (N.D.N.Y. Sept. 13, 2017) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been transferred to a different facility).  Accordingly, plaintiff's request for injunctive relief is dismissed without prejudice.

## IV. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiff's motion to amend the caption (Dkt. No. 21) is **GRANTED**;

2. The Clerk of the Court shall terminate Loughren as a defendant and add the Cayuga County Jail and Cayuga County as defendants in this action;

3. Plaintiff's claims against the Cayuga County Jail are **DISMISSED WITH PREJUDICE**;

4. If plaintiff wishes to proceed with this action, he must file an Amended Complaint

as set forth above **within thirty (30) days** from the date of the filing of this Decision and Order;

5.  If plaintiff timely files an Amended Complaint, this matter be returned to the Court for further review;

6.  If plaintiff fails to timely file an Amended Complaint as directed above, the Clerk shall enter judgment indicating that the remainder of this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and for failure to comply with this Decision and Order.  In that event, the Clerk is directed to close this case; and

7.  The Clerk shall serve a copy of this Decision and Order on Plaintiff, together with a copy of the Complaint.

IT IS SO ORDERED.

Dated:  December 4, 2018

Utica, New York.

United States District Judge